**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER G. BROADWATER** | : | **CIVIL ACTION NO. 1:12-CV-1937** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **CHRISTIAN D. FOW, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are three motions to dismiss, filed by defendants

Clifford Jobe, Jr. (Doc. 5), Christian Fow (Doc. 30), and the remaining defendants,

Commonwealth of Pennsylvania, Pennsylvania State Police, Nathan Swink, Ralph

Hockenberry, and David Rush (Doc. 12). For the reasons that follow, the court will

deny the motions (Docs. 12, 30) to dismiss Count I of the complaint, except the court

will dismiss any potential claim based on allegations of an unlawful arrest. The

court will grant Clifford Jobe's motion (Doc. 5) to dismiss Count II. The court will

deny the Commonwealth of Pennsylvania and the Pennsylvania State Police's

motion (Doc. 12) to dismiss Count III of the complaint. Additionally, the court will

order plaintiff to show cause why the action against defendants "John Does 1-5"

should not be dismissed for failure to serve the summons and complaint within 120

days pursuant to Federal Rule of Civil Procedure 4(m).

## I. __Background__[1]

This case arises out of an incident that occurred between plaintiff Christopher Broadwater ("Broadwater") and members of the Pennsylvania State Police ("PSP"). On the evening of September 29, 2010, a nurse from Humana Insurance Company contacted the PSP and explained that she worked for a service that called people monthly to check on their welfare. (Doc. 1 ¶ 14). The nurse stated that while speaking with Broadwater, he threatened violence against another individual. (Id. ¶ 15). She advised that Broadwater suffered from manic depression and was potentially dangerous. (Id. ¶ 16). The nurse opined that the threats were sufficient for the PSP to bring Broadwater to a hospital for an involuntary evaluation, pursuant to 50 P.S. § 7302, but that a warrant had not yet been issued in compliance with the statute. (Id. ¶ 20).

Christian Fow ("Fow"), a corporal with the PSP, directed troopers to respond to Broadwater's residence and check on his welfare. (Id. ¶¶ 18, 19). Fow directed troopers that "Mr. Broadwater was to come voluntarily or involuntarily." (Id. ¶ 21). Troopers Nathan Swink ("Swink"), Ralph Hockenberry ("Hockenberry"), and Nathan Drayer reported to Broadwater's residence. (Id. ¶¶ 23, 25).

_____

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See _infra_ Part II. The court disregards those portions of the complaint which consist of legal conclusions or a formulaic recitation of the elements of a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010). The court did not consider a submitted video of the incident in question (see Doc. 39) because it is extrinsic to the complaint.

Broadwater spoke with the troopers on his porch and, after some discussion, Broadwater agreed to go with the troopers to the hospital after he put his dogs inside the home.  (Id. ¶¶ 24-28).  Broadwater coaxed his dogs back in his residence and closed his front door.  (Id. ¶ 29).  When Broadwater turned to leave with the troopers, Swink allegedly deployed the prongs of his taser into Broadwater's chest.  (Id. ¶ 30).  According to the complaint, the shock from the taser caused Broadwater to crash into his front door, and fall in the threshold of his home.  (Id. ¶ 31).  Broadwater purportedly removed the prongs from his chest, reentered his home, and closed the door.  (Id. ¶ 32).  Hockenberry kicked Broadwater's front door open and, together with Swink, pulled Broadwater back onto the porch.  (Id. ¶ 39).  Hockenberry and Swink handcuffed Broadwater's hands together behind his back and placed him in the rear of Swink's patrol vehicle.  (Id. ¶¶ 40, 42). Broadwater alleges that the troopers were fully aware that Broadwater had prior shoulder and wrist surgeries, and that he suffered residual infirmities.  (Id. ¶ 40).  Broadwater remained handcuffed in the back seat for approximately 30 minutes.  (Id. ¶ 47).  During this time, Fow and David Rush ("Rush"), a PSP criminal investigator, separately responded to the scene.  (Id. ¶¶ 45, 47, 55).  While enroute, Fow referred to Broadwater as a "retard" on the police radio.  (Id. ¶ 46).  When Rush arrived, Fow directed Swink, Hockenberry, and Rush to enter Broadwater's residence so Swink and Hockenberry could show Rush the location of the events in question.  (Id. ¶ 55).

Meanwhile, Broadwater moved around in the back of the patrol car and complained repeatedly about the pain caused by the handcuffs.  (Id. ¶ 49).  The

3

handcuffs were not properly affixed, and gradually tightened as the result of Broadwater's movements. (Id. ¶ 48). Fow allegedly advised Broadwater that the troopers would "hogtie" him if he continued to try to escape from the handcuffs. (Id. ¶ 51). Broadwater explained to Fow that he was moving around because he was in pain, not because he wished to remove the handcuffs. (Id. ¶ 52). According to the complaint, Fow never checked the handcuffs to ensure that Broadwater was properly restrained. (Id. ¶ 53). Broadwater also never displayed any actions evincing an attempt to escape the patrol car. (Id. ¶ 50).

As a result of Broadwater's complaints, Fow purportedly opened the patrol vehicle door and pepper sprayed the already restrained Broadwater. (Id. ¶ 61). Fow then allegedly struck Broadwater multiple times in the face, stating, "Stop fucking with the fucking handcuffs. I am not going to ask you again. You understand?" (Id. ¶ 62). Broadwater immediately experienced severe pain, fear, a difficulty in breathing, temporary blindness, and deep lacerations to his face. (Id. ¶ 63). Blood poured from his face. (Id. ¶ 65). Less than a minute later, Broadwater released his seatbelt and rolled out of the open door headfirst onto the grass next to the patrol vehicle. (Id. ¶ 66).

While Broadwater was lying on the grass facedown, Fow allegedly put his knees on top of him, grabbed his hair, and repeatedly punched him in the face. (Id. ¶ 55). Fow then instructed Swink to taser Broadwater. (Id. ¶ 77). Hockenberry and Rush observed the beating, which lasted for approximately two minutes. (Id. ¶¶ 78, 79). Thereafter, Swink transported Broadwater to the hospital, where he received

numerous stitches to repair his facial wounds.  (Id. ¶¶ 80, 82).  Swink then transported him to jail.  (Id. ¶ 84).

Rush charged Broadwater with the following crimes: aggravated assault, simple assault, criminal attempt to escape, and resisting arrest.  (Id. ¶ 100).  The criminal attempt to escape and aggravated assault charges were withdrawn.  (Id. ¶ 101).  Broadwater entered a *nolo contendere* plea on the simple assault and resisting arrest charges and was sentenced to probation.  (Id. ¶ 102).

As a supervisor, Fow is obligated to prepare a Significant Action Report ("SAR"), which is a summary of the shift's events sent to the station command staff.  (Id. ¶ 89).  In the SAR for the evening in question, Fow referred to Broadwater as "Mr. Crazy."  (Id. ¶ 90).  He further wrote, "Cpl. Julock just delivered the criminal complaint to H-1 for this guy.  Julock reports they are currently inserting a catheter into our crazy dude because he can't pee.  You can hear the yelling in the lobby. (Karma)."  (Id. ¶ 91).

As a result of the incident, the Office of the Attorney General for the Commonwealth of Pennsylvania filed criminal charges against Fow.  (Id. at 1).  Clifford Jobe ("Jobe"), a retired Commander of the PSP, testified at Fow's jury trial as an expert witness.  (Id. ¶ 107)  He testified that Fow's actions were consistent with the PSP's policies and the law.  (Id. ¶¶ 107, 108, 109).  Fow was acquitted.  (Id. at 2).

Broadwater filed the instant complaint on September 27, 2012.  In Count I, Broadwater alleges that Fow, Swink, Hockenberry, and Rush are liable pursuant to

5

42 U.S.C. § 1983 because they violated his Fourth Amendment rights against unlawful search and excessive force. (Doc. 1 ¶¶ 115-125). In Count II, Broadwater asserts a claim of supervisory liability pursuant to § 1983 against Jobe and "John Does 1-5."[2] (Doc. 1 ¶¶ 126-134). In Count III, Broadwater alleges that the Commonwealth of Pennsylvania ("the Commonwealth") and the PSP violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq* ("ADA"), and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("§ 504"). (Doc. 1 ¶¶ 135-148).

On December 11, 2012, Jobe filed a motion to dismiss Count II of the complaint.[3] (Doc. 5). On December 12, 2012, the Commonwealth, PSP, Swink, Hockenberry, and Rush filed a motion to dismiss Counts I and III. (Doc. 12). On February 18, 2013, Fow filed a motion to dismiss Count I of the complaint. (Doc. 30). The motions are fully briefed and ripe for disposition.

---

[2] "John Does 1-5" have not been served within 120 days of the complaint filing date. See FED. R. CIV. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."). The court will order Broadwater to show cause, within fifteen (15) days, why the action against "John Does 1-5" should not be dismissed for failure to serve the summons and complaint.

[3] Fow's motion, as well as the motion filed by the Commonwealth, PSP, Swink, Hockenberry, and Rush, also request dismissal of Count II. (See Docs. 12, 30). However, Count II only pertains to Jobe and "John Does 1-5." (Doc. 1 ¶¶ 126-134). Jobe filed a separate motion to dismiss. (Doc. 5). No attorney has entered an appearance on behalf of "John Does 1-5" or filed a motion to dismiss. The court will disregard these sections of the motions filed by Fow and the Commonwealth, PSP, Swink, Hockenberry, and Rush.

## II. **Legal Standard**

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In addition to reviewing the facts contained in the complaint, the court may also consider exhibits attached to the complaint and matters of public record. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679; Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.  A complaint must assert sufficient facts "to raise a

reasonable expectation that discovery will reveal evidence" of the elements

necessary for relief.  Twombly, 550 U.S. at 556.  When the complaint fails to present

a *prima facie* case of liability, courts should generally grant leave to amend before

dismissing a complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d

Cir. 2002).

**III.**　**Discussion**

The three motions together contemplate the dismissal of Broadwater's

complaint in its entirety.  Fow, Swink, Hockenberry, and Rush move to dismiss

Broadwater's § 1983 claim in Count I.  Jobe alleges that Broadwater fails to state a

claim in Count II for supervisory liability pursuant to § 1983.  Finally, the

Commonwealth and the PSP assert that Broadwater fails to state a claim under

Count III for liability under the ADA and § 504.  The court shall address each

contention in turn.[4]

### 1.    Count I: 42 U.S.C. § 1983 Claim

42 U.S.C. § 1983 offers private citizens a means to redress violations of federal

law committed by state officials.  Section 1983 is not itself a source of substantive

rights but instead provides a method for vindicating rights secured through the

Constitution or federal statutes.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

In the instant case, Broadwater seeks damages for alleged violations of his Fourth

Amendment right against unreasonable search and seizures.  U.S. CONST. amend.

IV.  In response, Fow, Swink, Hockenberry, and Rush allege that Broadwater's

claim is barred under the Supreme Court's holding in Heck v. Humphrey, 512 U.S.

477 (1994), or, alternatively, that Broadwater fails to state a legally cognizable claim

against Fow, Hockenberry, and Rush.  Fow, Swink, Hockenberry, and Rush also

claim qualified immunity to suit.

---

[4] The Commonwealth, PSP, Fow, Swink, Hockenberry, and Rush also allege
that Broadwater is not entitled to punitive damages because punitive damages are
not recoverable from the Commonwealth or its officers sued in their official
capacities.  (Doc. 13, 24-27; Doc. 31, 13-15).  See Will v. Michigan Dept. of State
Police, 491 U.S. 58, 71 (1989); City of Newport v. Fact Concerts, Inc., 453 U.S. 247,
271 (1981).  Relatedly, defendants also assert that the Eleventh Amendment bars a
§ 1983 suit against the Commonwealth, PSP, and the troopers sued in their official
capacities.  (Doc. 13, 24-27; Doc. 31, 13-15).  Broadwater's complaint is not at odds
with these principles.  Broadwater clarifies that he is not seeking punitive damages
from the Commonwealth and the PSP.  (Doc. 14, 25-26; Doc. 38, at 15).  Further, he
is suing the individually named trooper defendants in their personal capacities only.
(Doc. 1 ¶¶ 5-9).  Finally, Broadwater is not suing the Commonwealth and the PSP
under § 1983 but only under § 504 and Title II of the ADA.  (Doc. 1 ¶¶ 135-148).

## A.    *Heck v. Humphrey*

In <u>Heck v. Humphrey</u>, the Supreme Court held that a plaintiff may not

recover damages under § 1983 if doing so would necessarily invalidate the plaintiff's

prior conviction.  512 U.S. at 486-87.  For example, a defendant convicted for

resisting a lawful arrest could not subsequently bring a § 1983 action against the

officer for an unlawful arrest in violation of the Fourth Amendment unless and until

his conviction had been overturned or invalidated.  <u>Id.</u> at 487 n.6.  The <u>Heck</u> Court

specifically noted that a suit for damages attributable to an allegedly unreasonable

search was still valid under its holding, even if the search had produced evidence

that aided in the plaintiff's outstanding conviction.  <u>Id.</u> at 487 n.7.  <u>See also</u> <u>Sanders</u>

<u>v. Downs</u>, 420 F. App'x 175, 179 (3d Cir. 2011) (holding that an unlawful search claim

was not barred because "<u>Heck</u> does not typically bar actions for Fourth

Amendment violations").  Convictions for assault or resisting arrest also do not bar

§ 1983 claims for excessive force.  <u>See</u> <u>Garrison v. Porch</u>, 376 F. App'x 274, 277-78

(3d Cir. 2010) (assault); <u>Nelson v. Jashurek</u>, 109 F.3d 142, 145-46 (3d Cir. 1997)

(resisting arrest).

In the case *sub judice*, Broadwater pleaded *nolo contendere* to simple assault

and resisting arrest.  Broadwater claims violations of his Fourth Amendment rights

based on an alleged unlawful search of his home and the use of excessive force.

(Doc. 1 ¶¶ 115-125).  <u>Heck</u> does not bar these claims because they do not imply the

invalidity of his underlying conviction.  However, Broadwater's complaint also

includes an allegation that "Defendant Fow caused Swink and Hockenberry to use

10

unlawful force against Mr. Broadwater to effect an *unlawful arrest*." (Doc. 1 ¶ 119) (emphasis added). Such a claim directly implicates the validity of his *nolo contendere* plea for resisting a lawful arrest. Thus, Heck bars Count I only to the extent that Broadwater seeks damages for an unlawful arrest. Broadwater's claim based on an unlawful search and excessive force may move forward under Heck.

B. *Sufficiency of Complaint*

Fow, Hockenberry, and Rush also argue that Broadwater does not successfully assert a constitutional violation upon which relief may be granted.[5] Broadwater contends that he properly alleges an excessive force and unlawful search claim against all three defendants. The court will address Broadwater's allegations of excessive force first, and then turn to the unlawful search allegations.

i. *Excessive Force*

A law enforcement officer's use of excessive force in the course of an arrest or investigatory stop constitutes an unlawful "seizure" under the Fourth Amendment. Graham v. Conner, 490 U.S. 386, 394 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). To determine whether specific conduct qualifies as excessive force, the court must examine its objective "reasonableness." Graham, 490 U.S. at 395-96. The court should consider the severity of the crime, the suspect's "immediate threat" to the safety of officers or others, resistance to arrest, attempts to flee, and access to weapons. Id. at 396; Couden v. Duffy, 446 F.3d 483,

---

[5] Swink does not move to dismiss the allegations against him on this ground.

497 (3d Cir. 2006). The court should also consider the duration of the law enforcement officer's use of force, whether the officer was attempting to effect an arrest, and the presence of accomplices. Sharrar v. Felsin, 128 F.3d 810, 822 (3d Cir. 1997) (*abrogated on other grounds by* Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)). The court must examine the use of force from "the perspective of a reasonable officer on the scene," without the benefit of hindsight. Graham, 490 U.S. at 396. For example, the Third Circuit in Couden concluded that officers used excessive force when they jumped on a 14-year-old burglary suspect, put a knee in his back, pointed guns at his head, handcuffed him, and sprayed him with mace. 446 F.3d at 497. The court emphasized that these actions were unreasonable because the suspect was cooperative and there was no reason to believe that he was armed or had any accomplices. Id.

In the case *sub judice*, Broadwater alleges that Fow pepper sprayed Broadwater in the face while he was restrained by a seatbelt and handcuffs in the back seat of a patrol car. (Doc. 1 ¶ 61). Broadwater states that Fow then pulled Broadwater toward him and struck him at least three times in the face. (Id. ¶ 62). Broadwater contends that he immediately experienced severe pain, fear, a difficulty in breathing, temporary blindness, and deep lacerations to his face. (Id. ¶ 63). Fow claims that he believed Broadwater was attempting to escape from his handcuffs, but Broadwater had previously advised Fow that he was fidgeting because the handcuffs were causing him pain. (Id. ¶¶ 49, 51, 52). According to the complaint, Fow never checked the handcuffs himself to ensure that Broadwater was properly

secured.  (Id. ¶ 53).  Broadwater further alleges that he never displayed any actions

evincing an attempt to escape the patrol car prior to being pepper-sprayed.  (Id. ¶

50).  When Broadwater exited the vehicle, he asserts that Fow put his knees on top

of him, grabbed his hair, and repeatedly punched him in the face.  (Id. ¶ 55).  Fow

then instructed Swink to taser Broadwater.  (Id. ¶ 77).  Fow purportedly engaged in

this conduct despite knowing that several other troopers were present at the scene

and that Broadwater was lying facedown on the ground, handcuffed, covered in

pepper spray, and bleeding profusely from his face.  These serious factual

allegations present a plausible claim for relief against Fow for excessive use of

force.

Broadwater also alleges that Hockenberry directly used excessive force

against him.  According to Broadwater, Hockenberry kicked Broadwater's front

door open and, together with Swink, pulled Broadwater onto the front porch.  (Id.

¶ 39).  Hockenberry and Swink handcuffed Broadwater's hands together behind his

back, placed him in the rear of Swink's patrol vehicle, and restrained him with a

seatbelt.  (Id. ¶¶ 40, 42).  The troopers did so despite being aware of Broadwater's

prior shoulder and wrist surgeries.  (Id. ¶ 40).  Broadwater remained handcuffed in

the back seat for approximately 30 minutes, despite numerous complaints about the

pain caused by the handcuffs.  (Id. ¶¶ 45, 47, 49).  The placement of excessively tight

handcuffs and the failure to respond to an arrestee's pleas to loosen them may

constitute excessive force when the officer is not in the "midst of a dangerous

situation involving a serious crime or armed criminals."  Kopec v. Tate, 361 F.3d

13

772, 777 (3d Cir. 2004). Ostensibly, the officers in the instant matter were not faced with imminent danger such that they could not address Broadwater's complaints. Under <u>Kopec</u>, Broadwater successfully asserts a claim for excessive force against Hockenberry upon which relief may be granted.

Broadwater also claims that Hockenberry and Rush failed to intervene and protect Broadwater from Fow and Swink's use of excessive force. Regardless of his supervisory status, a law enforcement officer may be liable under § 1983 if he fails to intervene in the improper use of force when he has a reasonable opportunity to do so. <u>Smith v. Mensinger</u>, 293 F.3d 641, 650-52 (3d Cir. 2002); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186 (3d Cir. 1995). This duty applies even if the officer using excessive force is a superior. <u>Smith</u>, 293 F.3d at 650-52.

Broadwater alleges that Hockenberry and Rush personally witnessed Fow and Swink beating Broadwater next to Swink's patrol vehicle. (Doc. 1 ¶¶ 78, 122). Broadwater claims that they did not attempt to intervene or stop the troopers' conduct, which lasted approximately two minutes. (<u>Id.</u> ¶¶ 78, 79, 122). The court finds that Broadwater successfully alleges a claim against Fow, Hockenberry and Rush for excessive force under § 1983.

ii.    *Unlawful Search*

Under the Fourth Amendment, warrantless searches of a home are presumptively unreasonable. <u>Groh v. Ramirez</u>, 540 U.S. 551, 559 (2004) (quoting <u>Payton v. New York</u>, 445 U.S. 573, 587-88 (1980)); <u>Johnson v. United States</u>, 333 U.S. 10 (1948). According to the complaint, when Broadwater retreated into his home,

14

Hockenberry kicked Broadwater's front door open and, together with Swink, pulled Broadwater back onto the porch. (Id. ¶ 39). Fow subsequently directed Swink, Hockenberry, and Rush to enter Broadwater's residence so Swink and Hockenberry could show Rush the location of the events in question. (Id. ¶ 55). The troopers never possessed a warrant. (Id. ¶¶ 20, 21, 118). As alleged in the complaint, Hockenberry and Rush both entered Broadwater's home without a warrant and Fow directed their allegedly unlawful conduct. See Rode v. Dellarcirprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that a supervisor may be directly liable under § 1983 if he personally directed unconstitutional conduct). Based on the facts alleged in the complaint, it is impossible to ascertain whether an exception to the warrant requirement may apply. At this early procedural stage, Broadwater's complaint successfully states a § 1983 claim against Fow, Swink, Hockenberry, and Rush for excessive force and an unlawful search.

C. *Qualified Immunity*

Fow, Swink, Hockenberry, and Rush also assert their entitlement to qualified immunity. Application of qualified immunity requires two distinct questions. First, the court must determine whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), *abrogated in part by* Pearson v. Callahan, 555 U.S. 223, 236 (2009); Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). Second, the court must analyze whether the right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232. A right is "clearly established" if a reasonable state

15

actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates.  Id., at 231; Williams, 455 F.3d at 191; see also Wilson v. Layne, 526 U.S. 603, 609 (1999).  The court may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Pearson, 555 U.S. at 236.  An officer's eligibility for qualified immunity is a question of law that is properly answered by the court, preferably at the summary judgment stage of a proceeding.  Carswell v. Borough of Homestead, 381 F.3d 235, 241 (3d Cir. 2004).

The court has already concluded *supra* that Broadwater adequately alleges that Fow, Hockenberry, and Rush violated his constitutional rights.  The complaint also makes sufficient allegations against Swink for the same violations.  According to the complaint, Swink deployed the prongs of his taser into Broadwater twice.  (Doc. 1 ¶¶ 30, 77).  He also handcuffed Broadwater behind his back, despite being aware of Broadwater's prior shoulder and wrist surgeries.  (Id. ¶¶ 40, 42).  Broadwater remained handcuffed in the back seat of Swink's patrol car for approximately 30 minutes, despite voicing numerous complaints about the pain caused by the handcuffs.  (Id. ¶¶ 45, 47, 49).  Broadwater also contends that Swink failed to intervene during Fow's alleged use of excessive force.  (Id. ¶¶ 71-74).  Finally, Swink participated in the allegedly unlawful search of Broadwater's home.  (Id. ¶¶ 39, 55).

Solely in the context of these allegations, the court must determine whether Fow, Swink, Hockenberry, and Rush would have known that their conduct was unconstitutional. There is no doubt that the subject constitutional rights were clearly established on the date of the incident in question – September 29, 2010. Graham v. Connor, 490 U.S. 386 (1989) and Sharrar v. Felsin, 128 F.3d 810 (3d Cir. 1997) (*abrogated on other grounds by* Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)) set forth factors governing the reasonableness of an officer's use of force. Green v. N.J. State Police, 246 F. App'x 158, 163 (3d Cir. 2007). Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) and Baker v. Monroe Township, 50 F.3d 1186 (3d Cir. 1995) clearly established liability for a failure to intervene in the use of excessive force. Garbacik v. Janson, 111 F. App'x 91, 94 (3d Cir. 2004). The prohibition against warrantless searches of a home dates back to the nation's founding. See U.S. Const. amend. IV.

Fow, Swink, Hockenberry, and Rush argue that it would not be reasonably apparent to troopers in their position that their use of force, or failure to intervene, amounted to a constitutional violation.[6] They point to Broadwater's *nolo contendere* plea for resisting arrest and claim that force was necessary to overcome Broadwater's resistance. This argument lacks merit: even if law enforcement

---

[6] Swink, Hockenberry, and Rush also argue that it would not be reasonably apparent to troopers in their position "that arresting plaintiff under the circumstances presented" violated Broadwater's constitutional rights. (Doc. 13, 18-19). This argument misses the point: Broadwater's arrest has nothing to do with his claims for excessive force and an unlawful search other than being an additional circumstance for the court's consideration.

officers are justified in using a certain amount of force to overcome a suspect's resistance, the use of excessive force is nonetheless actionable. In light of the factual scenario framed by the four corners of the complaint, the court concludes that the troopers would have known that employing such brute force was unconstitutional. According to the *allegata*, Broadwater was essentially incapacitated throughout the majority of the encounter. Fow pepper sprayed and repeatedly punched Broadwater when Broadwater was handcuffed and seatbelted in the back seat of a patrol car. (Doc. 1 ¶¶ 61-65). Fow and Swink purportedly continued the assault outside the patrol vehicle while Broadwater was lying facedown on the ground, handcuffed, covered in pepper spray, and bleeding profusely from his face. (Id. ¶¶ 61-79). If these facts are proven, Broadwater did not present an immediate threat to the troopers. Construing the facts in the light most favorable to Broadwater, there is no indication that Broadwater was either dangerous or likely to flee. Hence, Fow, Swink, Hockenberry, and Rush are not entitled to qualified immunity. Broadwater may not bring a § 1983 claim for unlawful arrest, but his § 1983 claim based on excessive force and an unlawful search survives in its entirety.

### 2. Count II: Supervisory Liability Claim

Jobe alleges that Broadwater cannot successfully assert against him a claim of supervisory liability pursuant to § 1983. Jobe states that he was retired from the PSP when the incident in question took place, he was never the direct field supervisor of any of the named trooper defendants, and he was not in charge of

18

developing policy for the PSP. (Doc. 5, at 4). Jobe further asserts that Broadwater did not plead the allegations against him with sufficient particularity. (Id.) Jobe contends that Broadwater named him as a defendant in an attempt to disqualify him from presenting expert testimony at trial. (Id. at 4-5). Broadwater responds that Jobe established and maintained a policy that directly violated Broadwater's constitutional rights. Broadwater claims that Jobe knew of and acquiesced in a prior pattern of similar incidents or circumstances involving Fow and other PSP troopers.[7] (Doc. 11).

A supervisory defendant in a § 1983 action may not be liable based merely on the theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Instead, the plaintiff must allege that the supervisory defendant was personally involved in the incident at hand. Evancho v. Fisher, 423 F.3d 347, 353

---

[7] Broadwater also claims that Jobe's motion is untimely. Broadwater argues that he sent Jobe a request to waive service of the complaint on October 11, 2012. Broadwater contends that Jobe agreed to waive service, which created an answer deadline of December 10, 2012. (Doc. 11, at 1). See Fed. R. Civ. P. 4(d)(3) (requiring a defendant who waived service to serve an answer to the complaint within 60 days after the request for waiver was sent). Jobe did not file the instant motion with the court until December 11, 2012 – one day later. However, there is no indication from the record that Jobe actually waived service on October 11, 2012. The Commonwealth, PSP, Swink, Hockenberry, and Rush executed waivers on October 11, 2012 (Doc. 4), but this documentation does not include a waiver for Jobe. Regardless, even if Jobe did waive service, the controlling date under Rules 4(d)(3) and 12(a)(1)(A)(ii) is the date Jobe *served* an answer or motion to dismiss on Broadwater, not the date the answer or motion was filed with the court. Jobe's counsel filed a certificate of service with the court that states, "the foregoing pleading has been served upon all other parties at the addresses below via First-Class, U.S. Mail, Postage Prepaid, *this 7th day of December, 2012*." (Doc. 6, at 6). Thus, Jobe's motion is timely. Moreover, there is no evidence of prejudice to the respondent resulting from this minor discrepancy between filing and service.

(3d Cir. 2005). Unfortunately, the term "personal involvement" is not universally defined in applicable case law. See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) ("Plaintiffs acknowledge that the 'terminology' used to describe 'supervisory liability' is 'often mixed.'"). Overall, the supervisor must somehow exhibit a "deliberate indifference" to the deprivation of the plaintiff's constitutional rights. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Policy-making supervisors may be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting A.M. *ex rel.* J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)). A supervisor's failure to employ a specific supervisory practice or procedure to correct a known unreasonable risk of constitutional harm also satisfies the personal involvement requirement. Sample, 885 F.2d at 1118.

Mere knowledge and acquiescence in a subordinate's constitutional violations may also qualify as personal involvement. Rode v. Dellarcirprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Allegations that a supervisor "tolerated past or ongoing misbehavior" may suffice. Baker v. Monroe Twp., 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)). To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior.

See C.H. *ex rel.* Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000). A plaintiff may not allege that a supervisory defendant had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor. See McQueen v. Phila. Hous. Auth., Civ. A. No. 02-8941, 2003 WL 22533726, at *3 (E.D. Pa. Sept. 26, 2003). A failure to train only amounts to deliberate indifference "where the need for more or different training is obvious" and the lack of training can be expected to result in constitutional violations. Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989).

In assessing Count II of the instant complaint, the court disregards a number of legal conclusions couched as factual allegations, such as Broadwater's averment that "[t]he Defendant supervisors ignored a pattern of similar constitutional violations that occurred as a result of their actions or inactions." (See Doc. 1 ¶¶ 127-134). The actual factual allegations against Jobe are slim.[8] From 1988 until 2008, Jobe was a basic training instructor for the Pennsylvania State Police Bureau of Training and Education. (Doc. 1 ¶ 103). In 2006, the PSP promoted Jobe to Commander, in which position he was "responsible for the advanced and regional training of all of the troopers employed by Defendant PSP." (Doc. 1 ¶ 104). Jobe was responsible for "evaluating cases to determine whether or not the troopers' actions were consistent with Defendant PSP's policies and the law, in accordance

---

[8] The factual allegations in the complaint concerning the substance of Jobe's expert testimony at Fow's criminal trial are simply irrelevant to Broadwater's claim for supervisory liability because, quite obviously, the testimony occurred after the incident in question.

with Defendant PSP's training program." (Doc. 1 ¶ 105). At some point, Jobe trained Fow. (Doc. 1 ¶ 106).

The court finds that Broadwater has failed to state a claim against Jobe for supervisory liability. Broadwater does not allege that Jobe was responsible for establishing and maintaining, or correcting, any policy, practice, or custom for the PSP. There are no allegations that Jobe was responsible for monitoring and supervising troopers after their completion of training. Broadwater does not allege that Jobe ever evaluated Fow or any of the other trooper defendants, prior to the incident in question, to determine whether their conduct was consistent with the PSP's policies and the law. In fact, Broadwater makes no allegations whatsoever regarding Jobe's knowledge of any of the trooper's conduct prior to September 29, 2010.[9] Even if the court were to accept Broadwater's legal conclusion that Jobe failed to properly train Fow and the other trooper defendants, the complaint would still be insufficient. There are simply no factual allegations plausibly contending that Jobe knew of his failure to properly train troopers or knew of any trooper's unlawful conduct.

Broadwater relies primarily on three cases in opposition to Jobe's motion to dismiss. In <u>Zion v. Nassan</u>, 727 F. Supp. 2d 388 (W.D. Pa. 2010), a state trooper and his partner opened fire and killed an unarmed person in his car. 727 F. Supp. 2d at

---

[9] Broadwater made a number of factual allegations against "John Does 1-5" regarding their knowledge of Fow's alleged past and ongoing misbehavior, but does not allege that Jobe was also aware of Fow's allegedly unsavory conduct. (Doc. 1 ¶¶ 110-114).

392-93.  The estate representative and children of the decedent brought a supervisory liability claim pursuant to § 1983 against the PSP Police Commissioner, the trooper's Area Commander, the trooper's Commanding Officer, and the trooper's direct supervisor.  Id. at 391-93.  The complaint included numerous allegations of the defendant trooper's violent propensities both before and during his employment as a state trooper.  Id. at 392-93.  Notably, a civil jury previously found the trooper liable for the shooting death of a twelve-year old boy.  Id. at 392.  The complaint specifically alleged that the trooper's supervisors were aware of these incidents.  Id. at 392-93.  The supervisors did not order additional training of the trooper, and one even ordered a subordinate to alter the trooper's employment records.  Id.  In denying the defendant's motion to dismiss, the court noted that it was a "close question," but that plaintiffs adequately alleged sufficient facts establishing that the supervisors were aware of a pattern of violent behavior on behalf of the trooper and did nothing to remedy the situation.  Id. at 407.

In Barber v. Pennsylvania State Police, Civ. A. No. 06-1713, 2007 WL 2071896 (W.D. Pa. Jul. 19, 2007), the court denied the PSP Commissioner's motion to dismiss plaintiff's supervisory liability claim.  2007 WL 2071896, at *3.  The plaintiff specifically alleged that the PSP Commissioner occupied a position of responsibility, in which he "knew or should have know [sic] of the aforementioned problems and misconduct of the Pennsylvania State Police. . . ."  Id. at *4.  The plaintiff also alleged that other PSP troopers, other than the officer in question, had used excessive force on individuals.  Id.  The court reasoned that other legal claims

involving the use of excessive force should have placed the Commissioner on notice of the problem and alerted him to the need for further training and supervision. Id. Similarly, in Owens v. Hahnemann Univ., Civ. A. No. 94-4654, 1995 WL 392516 (E.D. Pa. Jun. 27, 1995), the court denied the defendant's motion to dismiss a supervisory liability claim resulting from a correctional facility inmate's suicide. The court gave credence to the plaintiff's allegations that the defendant, a psychiatrist, was aware of the number of suicides in correctional facilities, was aware of procedures available to minimize the risk of suicides, and deliberately chose not to pursue such measures. 1995 WL 392516 at *2.

The key factors in Zion, Barber, and Owens were the supervisory defendants' knowledge of ongoing constitutional issues or problems, authority or means to address the matters, and, ultimately, failure to take appropriate action. The facts alleged in the case *sub judice* are easily distinguishable. Broadwater does not claim that Jobe was aware of any alleged past and ongoing misconduct on behalf of Fow or the other trooper defendants. He also does not adequately assert that Jobe, as a training supervisor, was in any position to address issues of which he was aware.

Without such allegations, Broadwater is unable to establish a *prima facie* claim of deliberate indifference to Broadwater's constitutional rights.[10]

When a complaint fails for a lack of factual specificity, courts generally grant leave to amend before dismissing a complaint unless amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).  Amendment would be futile in the instant case because Broadwater acknowledges that he asserted all facts against Jobe that are available to him.  (Doc. 11, at 18).

---

[10] Various circuit courts of appeals, including the Third Circuit, have questioned the continued viability of a § 1983 supervisory liability claim after the Supreme Court's holding in Iqbal.  See, e.g., Dodds v. Richardson, 614 F.3d 1185, 1194-1202 (10th Cir. 2010); Parrish v. Ball, 594 F.3d 993, 1001 n.1 (8th Cir. 2010); Bayer v. Monroe, 577 F.3d 186, 190 n.5 (3d Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274-75 n.7 (1st Cir. 2009).  The court need not address this issue because Broadwater's complaint fails even under the existing supervisory liability standard.

### 3.    Count III: ADA and Rehabilitation Act Claim

Broadwater's remaining claim seeks damages from the Commonwealth and

the PSP under § 504 of the Rehabilitation Act[11] and Title II of the ADA.[12]  The *prima*

*facie* cases for compensatory claims brought pursuant to § 504 and ADA are

identical.[13]  See 42 U.S.C. § 12134(b); 42 U.S.C. § 12201; Chambers *ex rel.* Chambers

v. Sch. Dist. Of Phila. Bd. Of Educ., 587 F.3d 176, 189 (3d Cir. 2009).  In order to state

a claim under the ADA and § 504, Broadwater must sufficiently allege that he (1) is

disabled, (2) is otherwise qualified for the service, program, or activity of the public

---

[11]  Section 504 of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

[12] The ADA provides, in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

[13] Hence, the court intends any reference to ADA also to encompass Broadwater's § 504 claim.

entity, and (3) was discriminated against in that service, program, or activity solely

on the basis of his disability. See Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002,

1009 (3d Cir. 1995).[14] The ADA does not define "services, programs, or activities"

but § 504 specifies that "'program or activity' means all of the operations of . . . a

department, agency, special purpose district, or other instrumentality of a State or

of a local government[.]" 29 U.S.C. § 794(b)(1)(A). See also Schorr v. Borough of

Lemoyne, 243 F. Supp. 2d 232, 235-39 (M.D. Pa. 2003) (applying the ADA and § 504

to police activities and procedures); Yeskey v. Pa. Dep't of Corr., 118 F.3d 168 (3d

Cir. 1997) (applying the ADA and § 504 to state prisons).[15]

The Commonwealth and the PSP do not contest, for the purposes of the

instant motion, that Broadwater is disabled or that he is entitled to the benefit of a

lawful exercise of police powers. Instead, they argue that Broadwater does not

allege that he was discriminated against on the basis of his disability. To the

_____

[14] Section 504 requires an additional showing that the program receives
federal financial assistance. 29 U.S.C. § 794(a). Broadwater adequately alleges that
the PSP is a public entity that receives federal funding. (Doc. 1 ¶ 141).

[15] The Commonwealth and the PSP urge the court to adopt the Fifth Circuit's
holding in Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000), which held that the ADA
does not apply to police officers' actions during an arrest. The court's esteemed
colleague, the Honorable Yvette Kane, Chief Judge, undertook a thorough
refutation of the Hainze opinion in Schorr v. Borough of Lemoyne, 243 F. Supp. 2d
232, 235-39 (M.D. Pa. 2003), which the court adopts in toto. See also Gorman v.
Bartch, 152 F.3d 907 (8th Cir. 1998) (holding that the transport of an arrestee is
covered under the ADA); Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 718
(E.D. Pa. 2007) ("[S]erving an involuntary mental-health commitment order in a
safe manner is a service or activity covered by [the ADA] . . . ."); Arnold v. City of
York, 340 F. Supp. 2d 550 (M.D. Pa. 2004) (agreeing with Schorr that the ADA
applies to arrests).

contrary, Broadwater specifically alleges that the Commonwealth and the PSP

"failed to properly train troopers to have peaceful encounters with mentally and

physically disabled persons and failed to establish a proper policy for handling such

encounters . . . ." (Doc. 1 ¶ 137).  Indeed, the troopers who interacted with

Broadwater were purportedly well aware of his disabilities and were attempting to

escort him to a hospital for a mental health evaluation.  (Id. ¶¶ 18-27).  Broadwater

also alleges that the Commonwealth and the PSP "created a culture where [Fow]

felt comfortable openly referring to Mr. Broadwater as a 'retard' and as 'Mr. Crazy'

in official PSP communications . . . ." (Id. ¶ 147).  In light of these factual

allegations, Broadwater adequately states a claim against the Commonwealth and

the PSP under the ADA and § 504.

## IV. <u>Conclusion</u>

For the foregoing reasons, the court will deny the motions (Docs. 12, 30) to

dismiss Count I of the complaint but the court will dismiss any potential claim

based on allegations of an unlawful arrest. The court will grant Jobe's motion (Doc.

5) to dismiss Count II.  The court will deny the Commonwealth and the PSP's

motion (Doc. 12) to dismiss Count III of the complaint.  Additionally, the court will

order Broadwater to show cause why the action against defendants "John Does 1-5"

should not be dismissed for failure to serve the summons and complaint within 120

days pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate order follows.

          S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      May 14, 2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER G. BROADWATER** | : | **CIVIL ACTION NO. 1:12-CV-1937** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **CHRISTIAN D. FOW, et al.,** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 14th day of May, 2013, upon consideration of three motions

to dismiss, filed by defendants Clifford Jobe, Jr. (Doc. 5), Christian Fow (Doc. 30),

and the remaining defendants, Commonwealth of Pennsylvania, Pennsylvania

State Police, Nathan Swink, Ralph Hockenberry, and David Rush (Doc. 12), and for

the reasons set forth in the accompanying memorandum, it is hereby ORDERED

that:

1. Clifford Jobe's motion (Doc. 5) to dismiss is GRANTED.

2. Fow's motion (Doc. 30) to dismiss is GRANTED in part and DENIED in part. The court dismisses plaintiff's § 1983 claim only to the extent that it encompasses allegations of an unlawful arrest. In all other respects, the motion is DENIED.

3. The remaining defendants' motion (Doc. 12) to dismiss is GRANTED in part and DENIED in part. The court dismisses plaintiff's § 1983 claim only to the extent that it encompasses allegations of an unlawful arrest. In all other respects, the motion is DENIED.

4.    Within fifteen (15) days of the date of this order, Plaintiff shall show
      cause why the action against defendants "John Does 1-5" should not be
      dismissed.




                              _S/ Christopher C. Conner_
                              CHRISTOPHER C. CONNER
                              United States District Judge