IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER G. BROADWATER** | : | CIVIL ACTION NO. 1:12-CV-1937 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **CHRISTIAN D. FOW**, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

Presently before the court is a motion (Doc. 77) to dismiss the claims filed against defendants Paul J. Evanko, Jeffrey B. Miller, and Frank E. Pawlowski in Count II of the amended complaint (Doc. 58). For the reasons that follow, the court will grant the motion.

**I.   Background**[1]

This case arises out of an incident that occurred between plaintiff Christopher Broadwater ("Broadwater") and members of the Pennsylvania State Police ("PSP") on September 29, 2010. That night, several PSP troopers, including Christian Fow ("Fow"), Nathan Swink ("Swink"), Ralph Hockenberry ("Hockenberry"), and Nathan Drayer, reported to Broadwater's residence to check

---

[1] The court only recites those facts necessary and relevant to disposition of the instant motion. For a more thorough explanation of the events leading to this litigation, the court refers to its previous memorandum (Doc. 40) disposing of several other defendants' motions (Docs. 5, 12, 30) to dismiss.
   In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the amended complaint. See infra Part II. The court disregards those portions of the amended complaint which consist of legal conclusions or a formulaic recitation of the elements of a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010).

on his welfare. (Doc. 58 ¶¶ 16-25). According to the amended complaint, this visit resulted in the troopers tasering, pepper-spraying, and beating Broadwater. (Id. ¶¶ 26-102). PSP Investigator David Rush ("Rush") subsequently charged Broadwater with aggravated assault, simple assault, criminal attempt to escape, and resisting arrest. (Id. ¶ 103). The criminal attempt to escape and aggravated assault charges were withdrawn. (Id. ¶ 104). Broadwater entered a *nolo contendere* plea on the simple assault and resisting arrest charges and was sentenced to probation. (Id. ¶ 105).

As a result of the incident, the Office of the Attorney General for the Commonwealth of Pennsylvania filed criminal charges against Fow. (Id. at 2). Ultimately, Fow was acquitted after a jury trial. (Id.)

On September 27, 2012, Broadwater filed a complaint against PSP Troopers Fow, Swink, Hockenberry, and Rush, retired PSP Commander Clifford Jobe ("Jobe"), "John Does 1-5," the Commonwealth of Pennsylvania ("the Commonwealth"), and the PSP. (Doc. 1). In Count I, Broadwater alleged that Fow, Swink, Hockenberry, and Rush were liable pursuant to 42 U.S.C. § 1983 because they violated his Fourth Amendment rights against unlawful search and excessive force. (Doc. 1 ¶¶ 115-125). In Count II, Broadwater asserted a claim of supervisory liability pursuant to § 1983 against Jobe and "John Does 1-5." (Id. ¶¶ 126-134). In Count III, Broadwater alleged that the Commonwealth of Pennsylvania ("the Commonwealth") and the PSP violated Title II of the Americans with Disabilities

Act, 42 U.S.C. § 12131 *et seq* ("ADA"), and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("§ 504"). (Id. ¶¶ 135-148).

On December 11, 2012, Jobe filed a motion to dismiss Count II of the complaint, alleging that Broadwater failed to state a claim for supervisory liability pursuant to § 1983. (Doc. 5). On December 12, 2012, the Commonwealth, PSP, Swink, Hockenberry, and Rush filed a motion to dismiss Counts I and III. (Doc. 12). On February 18, 2013, Fow also filed a motion to dismiss Count I of the complaint. (Doc. 30).

The court ultimately denied the motions (Docs. 12, 30) to dismiss Count I of the complaint, granted Jobe's motion (Doc. 5) to dismiss Count II, and denied the Commonwealth and PSP's motion (Doc. 12) to dismiss Count III of the complaint. See Broadwater v. Fow, 945 F. Supp. 2d 574 (M.D. Pa. 2013). Additionally, the court ordered plaintiff to show cause why the action against defendants "John Does 1-5" should not be dismissed for failure to serve the summons and complaint within 120 days pursuant to Federal Rule of Civil Procedure 4(m). (Id.)

Plaintiff alleged that defendants "John Does 1-5" should not be dismissed due to plaintiff's demonstrated difficulty in obtaining the discovery from defendants required to identify the "John Does." (See Doc. 48). Thereafter, the court granted several extensions for plaintiff to serve a summons and complaint on defendants "John Does 1-5". (See Docs. 49, 51, 53). On December 19, 2013, Broadwater filed an amended complaint, replacing his allegations against defendants "John Does 1-5" in Count II with former Police Commissioners Paul J. Evanko ("Evanko"), Jeffrey B.

Miller ("Miller"), and Frank E. Pawlowski ("Pawlowski") (hereinafter collectively referred to as "the Former Commissioners"), as well as current Police Commissioner Frank Noonan ("Noonan").  (See Doc. 58).

Evanko served as PSP Commissioner from March 21, 1995 to March 24, 2003. (Id. ¶ 10).  Miller served as PSP Commissioner from March 24, 2003 to October 7, 2008.  (Id. ¶ 11).  Pawlowski served as PSP Commissioner from October 7, 2008 to April 12, 2011.  (Id. ¶ 12).  Broadwater is suing all three in their individual capacity. (Id. ¶¶ 10-12).  According to the amended complaint, Evanko failed to conduct a proper background and character check on Fow.  (Id. ¶ 114).  Evanko, Miller, and Pawlowski also allegedly failed to monitor Fow's character and mental health during his employment.  (Id. ¶ 115).  Broadwater alleges that had the Former Commissioners monitored Fow more closely, they would have discovered his numerous unsavory characteristics, such as Fow's reputation for engaging in violence, Fow's nickname as "The General Shit Magnet," the fact that the Early Intervention Program ("EIT") identified Fow as a problem employee, and that Fow had 20-30 internal affairs complaints lodged against him.  (Id. ¶ 116).

The Former Commissioners filed the instant motion (Doc. 77) to dismiss on January 24, 2014.  The motion is fully briefed and ripe for disposition.

**II.**   **Legal Standard**

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of

the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679; Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint must assert sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of the elements necessary for relief. Twombly, 550 U.S. at 556. When the complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**III.    Discussion**

The Former Commissioners allege that Broadwater's claim against them should be dismissed because any alleged acts of the Former Commissioners occurred outside the applicable two-year statute of limitations and the amended pleading does not relate back to the date of the original pleading pursuant to Federal Rule of Civil Procedure 15(c).  The Former Commissioners also allege that Count II of Broadwater's amended complaint fails to adequately state a claim against them for supervisory liability pursuant to § 1983.  The court finds that Broadwater fails to state a claim against the Former Commissioners for supervisory liability; thus, the court need not consider whether Broadwater's amended pleading relates back to the date of his original complaint.

42 U.S.C. § 1983 offers private citizens a means to redress violations of federal law committed by state officials.  Section 1983 is not itself a source of substantive rights but instead provides a method for vindicating rights secured through the Constitution or federal statutes.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  In the instant case, Broadwater seeks damages for alleged violations of his Fourth Amendment right against unreasonable search and seizures.  U.S. CONST. amend. IV.

A supervisory defendant in a § 1983 action may not be liable based merely on the theory of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Instead, the plaintiff must allege that the supervisory defendant was

personally involved in the incident at hand.[2]  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  The language used in case law to describe sufficient personal involvement varies.  See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) ("Plaintiffs acknowledge that the 'terminology' used to describe 'supervisory liability' is 'often mixed.'").  Overall, the supervisor must somehow exhibit a "deliberate indifference" to the deprivation of the plaintiff's constitutional rights.  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  Policy-making supervisors may be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting A.M. *ex rel.* J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).  A supervisor's failure to employ a specific supervisory practice or procedure to correct a known unreasonable risk of constitutional harm also satisfies the personal involvement requirement.  Sample, 885 F.2d at 1118.

Mere knowledge and acquiescence in a subordinate's constitutional violations may also qualify as personal involvement. Rode v. Dellarcirprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Allegations that a supervisor "tolerated past or

---

[2] Various circuit courts of appeals, including the Third Circuit, have questioned the continued viability of a § 1983 supervisory liability claim after the Supreme Court's holding in Iqbal.  See, e.g., Dodds v. Richardson, 614 F.3d 1185, 1194-1202 (10th Cir. 2010); Parrish v. Ball, 594 F.3d 993, 1001 n.1 (8th Cir. 2010); Bayer v. Monroe, 577 F.3d 186, 190 n.5 (3d Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274-75 n.7 (1st Cir. 2009).  The court need not address this issue because Broadwater's amended complaint fails even under the existing supervisory liability standard.

ongoing misbehavior" may suffice.  Baker v. Monroe Twp., 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)).  To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior.  See C.H. *ex rel.* Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000).  A plaintiff may not allege that a supervisory defendant had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor.  See McQueen v. Phila. Hous. Auth., Civ. A. No. 02-8941, 2003 WL 22533726, at *3 (E.D. Pa. Sept. 26, 2003).  A failure to train only amounts to deliberate indifference "where the need for more or different training is obvious" and the lack of training is known to likely result in constitutional violations.  Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989).

The court previously granted Jobe's motion to dismiss Broadwater's claim for supervisory liability pursuant to § 1983.  See Broadwater v. Fow, 945 F. Supp. 2d 574, 587-90 (M.D. Pa. 2013).  The court reviewed the scant factual allegations against Jobe, such as the fact that Jobe was a Commander "responsible for the advanced and regional training of all of the troopers employed by defendant PSP" and that he, at some point, trained Fow.  (Doc. 1 ¶¶ 104, 106).  The court found that Broadwater failed to state a claim against Jobe for supervisory liability because:

> Broadwater does not allege that Jobe was responsible for establishing and maintaining, or correcting, any policy, practice, or custom for the PSP. There are no allegations that Jobe was responsible for monitoring and supervising troopers after their completion of training. Broadwater does not allege that Jobe ever evaluated Fow or any of the other trooper defendants, prior to the incident in question, to determine whether their conduct was consistent with the PSP's policies and the law. In fact, Broadwater makes no allegations whatsoever regarding Jobe's knowledge of any of the trooper's conduct prior to September 29, 2010. Even if the court were to accept Broadwater's legal conclusion that Jobe failed to properly train Fow and the other trooper defendants, the complaint would still be insufficient. There are simply no factual allegations plausibly contending that Jobe knew of his failure to adequately train troopers or knew of any trooper's unlawful conduct.

945 F. Supp. 2d at 588-89. The court discussed three cases where the court denied a motion to dismiss a supervisory liability claim, explaining that in those three cases, "[t]he key factors . . . were the supervisory defendant's knowledge of an ongoing constitutional issue or problem, ability to solve that problem, and ultimate decision not to solve that problem." 945 F. Supp. 2d at 589-90; see Zion v. Nassan, 727 F. Supp. 2d 388 (W.D. Pa. 2010); Barber v. Pennsylvania State Police, Civ. A. No. 06-1713, 2007 WL 2071896 (W.D. Pa. Jul. 19, 2007); Owens v. Hahnemann Univ., Civ. A. No. 94-4654, 1995 WL 392516 (E.D. Pa. Jun. 27, 1995). The court found that Broadwater did not claim that Jobe was aware of any alleged past and ongoing misconduct on behalf of Fow or other troopers, or that Jobe was in any position to address issues of which he was aware. 945 F. Supp. 2d at 590.

Similarly, the amended complaint contains scant factual allegations against the Former Commissioners. Broadwater alleges that Evanko failed to conduct a proper background and character check on Fow. (Id. ¶ 114). Evanko, Miller, and

Pawlowski also allegedly failed to monitor Fow's character and mental health during his employment. (Id. ¶ 115). Broadwater alleges that had the Former Commissioners monitored Fow more closely, they would have discovered his numerous unsavory characteristics, such as Fow's reputation for engaging in violence, Fow's nickname as "The General Shit Magnet," the fact that the Early Intervention Program ("EIT") identified Fow as a problem employee, and that Fow had 20-30 internal affairs complaints lodged against him. (Id. ¶ 116).

However, the amended complaint never alleges that the Former Commissioners were actually aware of any problems or misconduct on behalf of Fow, the other defendant troopers, or any other members of the PSP. Broadwater also does not allege that the Former Commissioners were individually responsible for discovering such information. Moreover, the amended complaint does not even identify the specific actions the Former Commissioners should have taken against Fow based on what they "would have discovered" with closer monitoring. Broadwater's existing allegations are vague and conclusory. (See id. ¶¶ 130-37). Without facts identifying a pattern of excessive force incidents that the Former Commissioners were aware of and responsible for correcting through specific policies or procedures, Broadwater is unable to sufficiently plead the Former Commissioner's deliberate indifference to Broadwater's constitutional rights. Thus, Broadwater fails to state a claim for supervisory liability against the Former Commissioners.

When a complaint fails for a lack of factual specificity, courts generally grant leave to amend before dismissing a complaint unless amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000). However, the parties had the opportunity to engage in active discovery for approximately a year and a half prior to the filing of the instant motion, and this is the second time in which the court has dismissed Broadwater's supervisory liability claims against various defendants. Thus, at this stage of the litigation, amendment is clearly futile, and the court will dismiss Broadwater's supervisory liability claim against the Former Commissioners without leave to amend.

### IV.    Conclusion

For the foregoing reasons, the court will grant the motion (Doc. 77) to dismiss. An appropriate order follows.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     May 5, 2014